EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* BENITO MESTEY, acusado y apelante.

No. 3723.—*Sometido:* Diciembre 20, 1929. *Resuelto:* Diciembre 23, 1929.

374

*E. Martínez Nadal* y *E. Santana,* abogados del apelante; *R. A. Gómez,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El fiscal formuló acusación contra Dolores Maysonet y Benito Mestey porque el 31 de diciembre de 1926 voluntaria y maliciosamente quemaron la casa No. 61 de la calle de Columbia de Bayamón propiedad del segundo que la tenía asegurada, con el propósito de defraudar a la compañía aseguradora.

Los acusados alegaron ser inocentes y pidieron juicio por jurado. Llamada la causa para juicio la corte a petición del fiscal excluyó de la acusación a Maysonet ordenando el archivo de la causa en cuanto al mismo. Practicada la prueba, el jurado declaró culpable a Mestey y la corte lo condenó a sufrir tres años de presidio con trabajos forzados.

No conforme Mestey apeló para ante esta Corte Suprema y presentó un alegato que no cumple las disposiciones reglamentarias en cuanto al señalamiento y discusión de los errores. En el acto de la vista del recurso estuvo el apelante representado por su letrado que basó toda su defensa en el carácter deleznable, inverosímil y falto de crédito que atribuyó a la evidencia practicada motivo por el cual alegó que era insuficiente para sostener el veredicto de culpabilidad y la sentencia condenatoria apelada.

■■ Hemos estudiado la evidencia y a nuestro juicio es bastante.

No hay la más leve duda con respecto al hecho del incendio en sí. No sólo quedó destruída la casa a que se refiere la acusación sino que el incendio que en ella comenzó se extendió llegando a destruir unas ochenta y cuatro casas en el pueblo de Bayamón, entre las cuales se encontraban otras del acusado también aseguradas.

La culpabilidad del acusado está probada a nuestro juicio más allá de una duda razonable. Maysonet lo acusa directamente. La casa estaba desocupada. Maysonet fué con su dueño el acusado según él a lavar sus pisos y en el interior encontró "dos sacos mojados con gas y en el piso una vela prendida," viendo además al acusado "baldeando con gas por dentro." Así salieron de la casa, el acusado la cerró y poco después se produjo el incendio.

Es cierto que no se explica satisfactoriamente lo que dice Maysonet que dijo al acusado al ver los sacos y la vela a saber: "Benito, qué es eso?", contestando Benito: "Cállate que te asesino o te hago cómplice," porque parece inverosímil que el acusado llevara a un extraño bajo aquellas circunstancias a su casa, pero sí se explica perfectamente lo ocurrido actuando Maysonet en criminal combinación con Mestey, sobre todo después de conocido el resto de la prueba.

Aceptando esa explicación con todas sus consecuencias, esto es, reconociendo en el testigo el carácter de un verdadero cómplice, encuéntrase que su declaración está corroborada como exige la ley para que pueda ser tenida en cuenta.

El testigo Alfonso Castro declaró que como dos meses antes del incendio el acusado le propuso que le daría doscientos dólares si le pegaba fuego a la casa y el testigo contestó que buscara otro, y declaró además que después del incendio el acusado le dijo que Maysonet "había metido la pata porque eso era para hacerlo de noche y lo había hecho de día."

Se hace gran énfasis en que Castro fué condenado varias veces. Así resulta en efecto, pero ¿a qué otra clase de persona pudo proponerse lo que el acusado propuso al testigo? Las condenas no fueron por delito de perjurio.

Surge de las declaraciones de Maysonet y de Castro la seguridad con que el acusado hablaba sobre el hecho de lo difícil, de lo casi imposible que es el probar los delitos de incendio. De tal manera ello es' así, que a no haber hablado a medias la conciencia de Maysonet quizá movida por la magnitud de las consecuencias de su crimen a virtud del cual quedaron sin hogar tantas familias pobres,—la prueba muestra a Maysonet yendo a hablar con Mestey a su casa y diciéndole: ''Aquello parece un cementerio''—y a no haberse sentido seguro de su absolución, la condena de Mestey hubiera sido tarea bien ardua para el pueblo.

¿Por qué habló Castro? Su declaración es sospechosa como son siempre sospechosas las declaraciones de personas como él, pero no habiéndose demostrado ningún móvil avieso, su testimonio queda en pie. ¿Por qué no pensar que pudo influir también en su conciencia la magnitud del desastre? ¿No parece lógico que su misma anterior conexión con el suceso lo llevara a enterarse de cerca y entonces a ponerse en relación con Maysonet y trabajar como trabajó por obtener su libertad bajo fianza y hasta llegar a decirle, como dice que le dijo una vez: ''Como Benito te quiere embarcar, embárcalo a él.''

Pero no es sólo la declaración de Castro la que existe en el proceso.

La testigo Inés Rivera aporta datos muy importantes. Vió entrar y salir de la casa incendiada a Maysonet y al acusado tal como dice Maysonet. Vivía detras de la casa y ''sintió una peste a gasolina,'' fué a buscar un cajón y al acercarse a la casa de Benito (el acusado) ''era más fuerte la peste, y como a las siete la señora del frente dijo: 'Mercedes, de qué es esa flama?', miré y nos fijamos que el fuego salía

adentro, dentro de la casa, salía el fuego así y al momento explotó, como que reventó y salió por los lados.''

Varios testigos más vieron también a Maysonet y al acusado en la casa que estaba desocupada hacía dos meses y explican el fuego lo mismo que Inés Rivera saliendo de dentro de la casa cerrada.

Si a esto se agrega que tres testigos competentes declararon que la casa que estaba asegurada por ochocientos dólares era conocida de ellos y sólo valía de doscientos cincuenta a trescientos, habiéndose quemado otras casas también del acusado aseguradas todas por un valor superior al que realmente tenían, y lo dicho por varios testigos, entre ellos un policía, en relación con la actitud del acusado tratando de impedir que su casa fuera destruída para localizar el fuego, se concluirá que existe prueba independiente abundante que conecta al acusado con el crimen y que constituye una completa corroboración de la participación que en él le atribuye su cómplice Maysonet.

La prueba de descargo entre la cual está la propia declaración del acusado tiende a contradecir la de cargo. El Jurado resolvió el conflicto. Nada demuestra pasión, prejuicio, parcialidad. Ningún error manifiesto aparece. Al contrario, del conjunto de la prueba surge, como dijimos antes, la culpabilidad del acusado más allá de una duda razonable.

*Debe confirmarse la sentencia recurrida.*